## SOUTHERN BANK *v.* WOOD & CHAMPLIN.

An assignment of a vessel on the high seas in trust for the payment of particular creditors, by preference, made in another State, under whose laws it is valid between the parties, all of whom reside in that State, will protect such vessels when they arrive in a port in this State from attachment here, at the suit of a creditor of the assignor, whose debt was payable in the State where the assignment was made.

The validity of the assignment, must be determined by the laws of the State where it is made.

APPEAL from the Second District Court of New Orleans, *Morgan*, J. *Waples & Eustis*, for plaintiff and appellant. *Clarke & Bayne*, for defendants.

COLE, J. On the 6th of March, 1857, in the State of New York, the defendants, *Wood & Champlin*, copartners and residents of the city of New York, executed an Act in which they represented they were indebted to " sundry persons in sundry considerable sums of money," and being unable to pay the same in full, were desirous of making a fair and equitable distribution of their property and their effects, among their creditors, wherefore, for the sum of one dollar to them in hand paid, they sold, assigned and transferred to *Van Blascom & Hayes*, of the city of New York, in trust for certain purposes, all their property. The objects of this trust were :

1st. The sale of the property.

2d. The payment with the proceeds thereof of certain preferred creditors of the partnership.

3d. If sufficient remained, then payment was to be made of the remaining copartnership debts of the assignors.

4th. Afterwards, if the funds permitted, the individual creditors of the assigning partners were to be paid.

Schedules were annexed to the act, which described the property and gave the names of the preferred creditors.

On the 9th of March, 1857, bills of sale were made to the present intervenors of the bark or vessel, the " Mary & Susan," and of the ship " Chicora."

In the schedule annexed to the assignment, the bark and ship were also mentioned.

At the time of the assignment and sale of the bark and ship aforesaid, the said vessels were on their way from France to New Orleans.

Upon the arrival of the bark "Mary & Susan," at New Orleans, *W. J. Dewey* took possession of her, as agent of the intervenors, in accordance with instructions previously received. The ship " Chicora" arrived at New Orleans about one month after the bark, and *Dewey* gave notice to the captain to give him possession of her, according to instructions received from the assignees to take possession for them of the vessels and of all property belonging to *Wood & Champlin*.

Upon the arrival of the vessels, they were attached by the plaintiff, the Southern Bank, to satisfy the claims held by them against the assignors, *Wood & Champlin*. The attachment of the bark was subsequent to the possession taken of her by the agent, *Dewey*, and that of the ship was anterior thereto, she having been attached before her arrival.

*Van Blascom & Hayes*, the assignees, intervened in the suit, and claimed the vessels, in virtue of the assignment and sales aforesaid.

There were also other interventions, but the only contest now is as to the rights of the intervenors and those of the Southern Bank.

There was judgment for the intervenors, and plaintiff has appealed.

It is admitted that the deed of assignment, and the bills of sale of the bark and ship, were executed as they purport, and acknowledged and recorded as they purport; that the assignees, *Champlin & Wood*, were at the time of the assignment, indebted as stated in the schedule annexed to the assignment, which contains the names of the preferred creditors. It is also admitted that the common law prevails in New York.

The counsel for plaintiff, in his brief, admitting that the assignment was executed in New York prior to the attachment, and is in the usual form of such instruments made in the common law States, where voluntary assignments for the benefit of preferred creditors are not prohibited, present the question involved in this suit to the court, as follows : Will an attachment by a Louisiana creditor be defeated by an assignment of vessels at sea, legal under the laws of New York, fraudulent and void under the laws of Louisiana, by reason of preferences given to certain creditors ?

In order to determine the rights of the parties in this case, it must first be settled whether the assignment and sales transferred at once the title of the vessels to the assignees.

The law seems to be clear upon this point.

Abbot, in his work on Shipping, says : " It has been observed that the property of a ship is now always evidenced by written documents. And these documents not only furnish the owner with proof of his property, but also enable him to dispose of it when the ship is at sea, or in a foreign port.

" When a ship is abroad, a perfect transfer of the property may, at the common law, be made by assignment of the grand bill of sale, and delivery of that and the other documents relating to the ship, as the delivery of the key of a warehouse to the buyer of goods contained therein, is held to change the property of the goods, according to the rule of the civil law ; such delivery in each case being not merely a symbol, but the mode of enabling the buyer to take actual

SOUTHERN BANK
v
WOOD.
possession, as soon as circumstances will permit.  Abbott on Shipping, pp. 35, 37, § 28, 30.

In the present case, the assignors did not, by keeping possession of the vessels, cast a shade of simulation about the assignment; on the contrary, the agent of the assignees took possession of one of the vessels upon her arrival at her destined port of New Orleans, and would also have done the same with the other, if he had not been prevented by the attachment.

The title to the vessels passed to the assignees by the assigment confirmed by the sales, and the good faith of the parties was manifested by the action of the assignees in trying to get possession of the vessels.

A party ought not to be incapacitated from selling or transferring his property, because it is upon the sea, and he cannot give actual delivery.  If he were, he might go to protest with immense amounts invested in ships at sea.

In *Thuret et al.* v. *Jenkins et als.*, 7 M. p. 353, Judge Martin delivering the opinion of the court, said : "In the present case, the ship, the subject of the sale, was at sea, was a New York ship, and the vendors and vendee resident in New York.  If, therefore, according to the *lex loci contractus*, that of the domicil of both parties, the sale transfers the property without a delivery, it did so *eo instanti*, or not at all."

The facts of this case are, then, that the law of New York permits a debtor to favor certain creditors by an assignment of his property in trust, as has been done in this case ; that the assignment and sale of the vessels upon the high seas at the time, were valid by the laws of New York, and by the same laws transferred at once the title of the ships to the assignees.

Under these circumstances, we are of opinion that the plaintiff had no right to attach the vessels as the property of the assignors.

It is true that the assignment and sale were for the benefit of third parties, the preferred creditors, and not for that of the assignees, but the former had acquired rights by the assignment and by the laws of New York where the assignment was made, they had the right to claim a performance of the purposes of the trust.

At the time of the assignment and sales, the State of Louisiana had neither jurisdiction over the parties to the deeds, nor over the vessels.  The assignment and sales of the vessels were perfect, and vested title thereof in the assignees, in trust for the preferred creditors, before the vessels arrived within the jurisdiction of the State of Louisiana.  *Bernard* v. *Scott*, 12 An. 490.

However desirous we may be to protect the claims of our own citizens, we cannot disregard that comity which ought always to be exhibited to the laws of foreign States and to the contracts of their citizens under those laws, when they do not clash with our own.  The assignment and sales of these vessels did not, and could not conflict with our laws, because the vessels and the parties to these deeds, were not within the dominion of the State, when they were executed and the transfer took place ; and the parties to the acts were citizens of New York, where such acts are lawful.

Besides, the indebtedness sued upon by the plaintiff in this case, consists of thirteen bills of exchange, drawn by *Benjamin Bernard* to his own order and by him endorsed, upon one of the defendants, *Christopher Champlin*, a resident of the city and State of New York.  *Wood* is alleged to have been his commercial partner and to be thus also liable.  Twelve of these bills were accepted by *Champlin*, and by him made payable at the Broadway Bank ; one of them

SOUTHERN BANK
*v.*
WOOD.

has no acceptance endorsed upon it. The whole of them were protested for non-payment at the city of New York.

The indebtedness further consists of three drafts drawn by said *Bernard,* by virtue of certain letters of credit, given by *Champlin,* by which he bound himself to honor and accept these three drafts. They were, however, protested in New York ; *Champlin* having refused to accept the same.

The whole of said sixteen bills of exchange were drawn upon " *C. Champlin, Esq.,* 174 Front street, New York."

It is clear, then, that in the contemplation of the parties to these bills of exchange, that they were to be paid in the city and State of New York, and, therefore, that the contract between the parties, was to be executed in the State of New York, and not in that of Louisiana. Plaintiff, in purchasing these drafts, could see by their face, that they were to be paid in New York, and knew, therefore, that their right of being paid, would materially depend upon the laws of New York. It is, therefore, with a bad grace that plaintiff asks us to disregard this assignment and these sales, executed in New York according to its laws of property upon the high seas, in order to secure the payment of drafts, which, in the contemplation of the parties thereto, were to have been paid in the State of New York.

If contracts of this character could be disregarded by sister States, then there would be no safety in the most lawful transactions beyond the borders of the State where they were entered into.

Our laws do not allow a debtor to show a preference to his creditors, and any act passed in this State giving such preference, would clash with our laws, but a preference given by foreign creditors in their own country over our own citizens, does not conflict with our laws, because the act of preference takes place beyond their dominion.

If, indeed, the vessels had been at the port of New Orleans at the time of the assignment, then, as they would have been within our jurisdiction, the plaintiff would not have appealed in vain to the tribunals of Louisiana for protection, for then the citizens of New York could not expect to make property within our jurisdiction subject to the laws of New York, and in like manner plaintiff cannot expect to render property not subject to our jurisdiction at the time of its sale, to become subject to it by entering into our ports after the assignment and sales.

The case of *Norris* v. *Mumford,* 4 M., p. 12, is not adverse to this decision, for in that case, the sale took place in New York, but the cotton at the time of its sale was in New Orleans, and therefore the court properly decided that the sale did not vest the cotton in the purchasers, and was, therefore, subject to attachment by the creditors of the vendor.

In *Thuret et al.* v. *Jenkins et al.,* 7 M. 353, this court held valid the sale in New York of a ship at sea.

The case of *Beirne & Burnside* v. *Patton et al.,* is cited by plaintiff, but that differs in many features from the one at bar. For instance, the court said there was no legal evidence that the assignment was valid by the laws of Tennessee, where it was passed ; and a part of the argument of the court is based upon the hypothesis that the property being personal, is to be governed by the laws of Louisiana, where it is situated. The assignment also was to have its effect, according to the contemplation of the parties in Louisiana, and the assignment did not purport to convey all the property of the assignors. In this case, there is evidence that the assignment is valid by the laws of New York, the vessels as-

signed were not, at the time of assignment, within the jurisdiction of any particular country, but upon the high seas. They were indeed on their way from Havre to New Orleans, but it was not in the contemplation of the parties, that the contract should be carried into effect in New Orleans, but at New York, where all the parties had their domicil. It is true, that the assignees directed their agent at New Orleans to assume possession for them of the vessels, but this was to effect the objects of the trust and to hold the vessels and cargoes at their port of destination, subject to the rights of the preferred creditors.

New York being the home port of the vessels and also the domicil of the parties, it was the place where, in contemplation of law, the assignment and sales were to be carried into effect. But the vessels were prevented from arriving there by the attachments. In this case also, it is not pretended that the property transferred, bears an unjust proportion to the debts of the preferred creditors; on the contrary, the assignors transferred the whole of their property, and all their partnership and individual creditors were to be paid, but in a certain rank·

The case of *Tatum* v. *Wright, Williams & Co.*, 7 An. 358, has also been referred to.

*Tatum* had sold his cotton in Arkansas, to a purchaser, who paid the greatest part of the price in counterfeit bank notes; the purchaser brought the cotton to New Orleans and defendants advanced on it. *Tatum* sued defendants for the value of the cotton. It was held, that he could not recover, notwithstanding the statute of Arkansas provides that the owner may recover the property out of which he has been swindled, from any subsequent holder, because *Tatum*, by putting his cotton in the possession of the purchaser, as owner, reposed confidence in him, gave him credit and enabled him to commit a fraud on the defendants, and the equity of the original owner is not equal to that of the defendants, who have parted with their money, on the faith of a state of things which the plaintiff himself was the cause of being created.

The case of *Richardson et al.* v. *Leavitt et al.*, 1 An., p. 431, is somewhat similar in its features to that at bar, and the court held the assignment in New York to be valid. This decision was re-affirmed in the *Merchants' Bank of Baltimore* v. *The Bank of the United States*, 2 An. 659.

We would not pretend to affirm, that the assignment and sales would be valid if the assignors, knowing the vessels to be on their way to New Orleans, executed the assignment and sales with the intention of defeating the claims of the Southern Bank. This cannot, however, be presumed in this case, because there is nothing to justify the presumption, but that the vessels were on their way to New Orleans; whereas, against the presumption, there are the legality of the acts in New York, the actual indebtedness of the assignors to the creditors preferred, and a total abandonment of their property to their creditors.

Even if, as it has been argued, the assignees were nothing more than trustees, yet they held the property assigned in trust for the benefit of certain persons. These persons had, by the assignment, therefore, acquired certain rights, and parties have the prerogative of enforcing rights, whether they be derived from assignments or sales. And even if the preferred creditors can only enforce their rights in a court of chancery, these rights are not thereby destroyed.

It has also been objected, that the transfer of a ship at sea requires its completion by delivery or taking possession. This does not appear to be the recognized doctrine. Abbott declares that a perfect transfer of the property may, at the common law, be made by assignment of the grand bill of sale, and delivery of that

and other documents relating to the ship. (See previous quotation from Abbott <span style="float:right">Southern Bank<br>v.<br>Wood.</span> on Shipping ; also, *Thuret* v. *Jenkins*, 7 M. 353.)

Abbott also says, that such delivery transfers the property of a ship, the same as the delivery of the key of a warehouse to the buyer of goods contained therein is held to change the property of the goods, according to the rule of the civil law ; " such delivery, in such case, being not merely a symbol, but the mode of enabling the buyer to take actual possession, as soon as circumstances will permit." He also declares (p. 35), that delivery of actual possession is only necessary when it is possible, as for instance, when the ship is in the country of its owner at the time of sale.

Abbott does not mean, that the taking of actual possession is necessary to transfer the property of a ship ; for he had antecedently declared, that a *perfect transfer* of the property of a ship may be made by the assignment and delivery of the bill of sale and other documents relating to the ship. His signification is, that the bill of sale and other documents present such proof as authorizes the purchaser to take actual possession as soon as he can, and which will also justify him in a judicial tribunal in enforcing his right of possession.

It is true, if after the arrival of the ship at the home port, the purchaser does not take possession of her, this may be considered as a presumptive proof of simulation, but the taking possession does not perfect the title to a ship sold whilst upon the high seas ; it is only evidence that the transfer was real, and not simulated.

Before, then, the vessels arrived at New Orleans and were attached, a perfect title existed in the trustees for the benefit of the preferred creditors, so that no conflict of laws could arise between the laws of Louisiana and those of New York.

After a careful examination of this cause, we can see no sufficient reason to differ from the conclusion to which the District Judge arrived after an able and elaborate investigation.

Judgment affirmed, with costs.

Merrick, C. J., dissenting. The assignment to trustees was made on the 6th day of March, 1857, and transferred to the trustees all the rights they have acquired. The subsequent transfers of the two ships, on the 11th day of March, did not change the previous title of the trustees. These two sales were intended only as a compliance with the Act of Congress of the United States.

*Van Blascom & Hayes* paid nothing, in the eye of our law, for the ships ; for two dollars cannot be viewed as a serious consideration for two ships estimated at $20,000. C. C. 2439.

The intervenors were, therefore, nothing more than trustees, and they had incurred obligations towards the New York preferred creditors which could only be enforced in a court of chancery.

Now, by the law of England and New York, as well as most countries, the transfer of a ship at sea can be made by writing, provided delivery be obtained as soon as convenient on the return of the ship. The transfer, therefore, requires its completion by delivery, or taking possession.

But at the time it was sought to perfect this contract by delivery the ships were within the jurisdiction of Louisiana, and in all matters not national subject to her laws.

By the laws of Louisiana, the deed of trust thus sought to be perfected is deemed in fraud of creditors. Moreover, as to one of the ships, it was in the custody of the law before the agents of intervenors attempted to take possession, and

SOUTHERN BANK
*v.*
WOOD.

in the other the possession assumed within the limits of Louisiana has been disregarded, and the ship has been seized notwithstanding. Here arises, then, a conflict of laws, and the question is, which shall prevail? Will our courts, which look with disfavor upon trusts, and regard all assignments for the benefit of preferred creditors as fraudulent, enforce, to the prejudice of their own citizens, an instrument which only became perfect by an act done within our own territory, and, in one instance, after the property had been placed in the custody of their officers?

If the trustee had obtained possession prior to the ships arriving in Louisiana, there would be reason to maintain his possession as bailee. In this case, however, the intervenors are compelled to ask the courts for assistance to obtain actual possession of property which they never had in their possession out of Louisiana, and for which they paid no value, in order that they may sell and distribute the same to the citizens of other States, and to the exclusion of our own. I am not aware of any instance in which the comity of nations has been carried to this extreme. I would respect the rights of trustees which were absolutely perfect before the property arrived in Louisiana, but imperfect rights should not be consummated within our territory to the detriment of our own citizens.

LAND, J., concurs in this opinion.

Re-hearing refused.